IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| KEVIN DOOLITTLE, | ) |
| Plaintiff, | ) |
| v. | ) No. 13-CV-04261-C-DGK-SSA |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's (the "Commissioner") decision denying Plaintiff Kevin Doolittle's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, including affective disorder, but he retained the residual functional capacity ("RFC") to perform work as a surveillance systems monitor, touch-up screener for printed circuit board assembly, and final assembler of optical goods.

Because substantial evidence supports the ALJ's decision, the Commissioner's denial of benefits is AFFIRMED.

### Factual and Procedural Background

A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed his DIB application on August 14, 2012, and his SSI application on August 27, 2012. Both applications alleged a disability onset date of February 1, 2008. The

Commissioner denied his applications, and the Plaintiff subsequently requested an administrative hearing. After conducting a hearing, the ALJ denied relief on September 12, 2013. Plaintiff appealed, but the Appeals Council denied review, leaving the ALJ's opinion as the Commissioner's final decision. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be
2
Case 2:13-cv-04261-DGK   Document 13   Filed 12/29/14   Page 2 of 8

expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[1]

Plaintiff raises four arguments challenging the ALJ's treatment of his mental limitations at Steps Four and Five. As for Step Four, Plaintiff contends the ALJ erred by: (1) disregarding Plaintiff's low Global Assessment of Functioning[2] ("GAF") scores; (2) failing to develop the record with regard to Plaintiff's mental limitations; and (3) failing to include a limitation noted in the opinion from state agency reviewing psychologist Mark Altomari, Ph.D. ("Dr. Altomari"). With respect to Step Five, Plaintiff argues that the ALJ erred by relying upon Dr. Altomari's opinion to determine that Plaintiff could perform other jobs.

**I. Substantial evidence supports the ALJ's Step Four determination.**

A claimant's RFC is the most he can still do despite his limitations. *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007). Here, the ALJ assessed numerous limitations in formulating Plaintiff's RFC. The RFC, in relevant part, precluded Plaintiff to work involving "simple and routine tasks with no work around the general public." R. at 17. Plaintiff challenges this finding in three respects, but the Court finds each argument unpersuasive.

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); see 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[2] The Global Assessment of Functioning is a numeric scale ranging from 0 to 100, representing the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. rev. 2000).

3
Case 2:13-cv-04261-DGK   Document 13   Filed 12/29/14   Page 3 of 8

**A. The ALJ did not err in discounting Plaintiff's low GAF scores.**

Plaintiff first challenges the ALJ's discounting of his GAF scores. Plaintiff asserts that his mental health providers consistently assessed GAF scores in the 41 to 50 range. Citing to the *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV"), Plaintiff contends that scores in this range indicate serious limitations in occupational functioning. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000) (hereinafter *DSM-IV*) (noting that scores from 41-50 indicate serious psychological symptoms or a serious impairment in occupational functioning). Plaintiff thus concludes the ALJ erred in not according more weight to his scores in this range.

As a threshold matter, the Court notes that bare GAF scores, such as these, are of limited probative value in the RFC formulation for two reasons. First, the level of severity denoted by a GAF score does not correlate to the severity requirements under the Act. *See Mosier v. Colvin*, No. 4:13-06112-DGK-SSA, 2014 WL 4722288, at *3 (W.D. Mo. Sept. 23, 2014) (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764 (Aug. 21, 2000)). Accordingly, a litany of scores in the 41-50 range, although indicating a serious problem with occupational functioning in the DSM-IV sense, does not necessitate a finding of disabling limitations under the Act. Second, and most importantly, the psychology community has recently signaled a disfavor for GAF scores by dropping them as a diagnostic tool in the most recent edition of the *Diagnostic and Statistical Manual of Medical Disorders*. *Id.* (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). Therefore, contrary to Plaintiff's intimations throughout his briefing, his low GAF scores are not presumptively entitled to dispositive, or even great, weight in the disability determination. *See Gamez v. Colvin*, No. 13-4199-CV-W-DGK-SSA, 2014 WL 4112925, at *2 (W.D. Mo. Aug. 19, 2014) ("Low GAF scores have limited probative value.").

Nevertheless, an ALJ must still consider GAF scores, much like any other type of evidence, in formulating the claimant's RFC. *See Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010). In doing so, the ALJ is free to discount GAF scores if he finds them inconsistent with the other record evidence. *See Jones v. Astrue*, 619 F.3d 963, 974 (8th Cir. 2010).

Here, the ALJ explicitly considered and rejected Plaintiff's low GAF scores for two reasons. First, the ALJ characterized the GAF scores as mere "snapshots" of functioning. R. at 21. Second, the ALJ rejected the GAF scores because he found them inconsistent with other record evidence. R. at 21.

Plaintiff makes much of the ALJ's snapshot characterization, arguing that the since the GAF scores were taken from numerous visits over a long period, they provide a longitudinal picture of his limited functioning. The Court finds Plaintiff's focus on this issue misplaced, because regardless of the time period captured by the GAF scores, they are still inconsistent with the remainder of the record evidence. For instance, Plaintiff's treating sources often assessed scores in the 41 to 50 range, suggesting serious impairments in occupational functioning. R. at 462-63, 472, 511, 679, 598, 719; *see DSM-IV*, *supra*, at 34. However, during those same visits mental status examinations revealed relatively mild limitations, including that Plaintiff exhibited *fair* insight, judgment, memory, and concentration, and he was alert and oriented to person, time, place, and situation. R. at 462-63, 472, 511, 679, 698, 719. These patent inconsistencies between the objective findings and GAF scores detract from the scores' already low probative value.

Although Plaintiff does not address these inconsistencies, he notes that during many visits he presented with symptoms indicative of serious mental impairments. Plaintiff directs the Court to treatment notes documenting his depressed mood and affect, suicidal ideations, ruminant thoughts, and poor eye contact. R. at 462, 718, 697, 679. Undoubtedly, these

5

observations indicate that Plaintiff had serious *symptoms*. The presence of these symptoms, however, only corroborates the existence of a serious mental disorder, not necessarily the existence of disabling limitations from said disorder. And the objective findings in the preceding paragraph suggest that despite his serious mental disorder, Plaintiff still maintained the functional ability to do some work. Thus, the Court cannot conclude that the ALJ erred in rejecting Plaintiff's bare GAF scores as inconsistent with other record evidence.

### B. The ALJ did not err in relying on Dr. Altomari's opinion, nor did he abdicate his duty to develop the record.

Plaintiff next argues that the RFC is unsupported by substantial evidence because the ALJ relied on the opinion of a non-treating, reviewing psychologist. According to Plaintiff, the ALJ compounded this error by then failing to re-contact Plaintiff's treating psychiatrists or order a consultative examination. The Court finds both arguments unavailing.

Generally, an ALJ may not *solely* rely upon a non-treating, reviewing psychologist in formulating the claimant's RFC. *See Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014). However, an ALJ may consider such an opinion along with the remainder of the record evidence. *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007). Such is the case here. The ALJ commenced his RFC formulation by extensively discussing Plaintiff's medical records and subjective allegations. R. at 17-19. With this evidence as a backdrop, the ALJ then evaluated Dr. Altomari's opinion. R. at 20. Ultimately, the ALJ gave great weight to the portions of Dr. Altomari's opinion that he found consistent with Plaintiff's medical records and credible subjective allegations, while he gave partial or no weight to the portions of the opinion he found inconsistent with this same evidence. R. at 20. This careful, comparative analysis clearly refutes Plaintiff's contention that the ALJ solely relied upon Dr. Altomari's opinion.

Similarly unavailing is Plaintiff's argument that the ALJ failed to develop the record. An ALJ has an independent duty to fairly and adequately develop the record. *Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004). In some instances, this duty may entail ordering a consultative examination or re-contacting a treating source, but this only arises when a crucial issue is undeveloped or additional evidence is required to determine the claimant's disability status. *See* 20 C.F.R. §§ 404.1519, 404.1519a, 416.919, 416.919a (suggesting a consultative examination may be necessary if the record contains insufficient evidence on the issue of a claimant's ability to function in the workplace); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (noting that the ALJ only has to re-contact a treating source if a "crucial issue is undeveloped"). Here, the ALJ was under no obligation to either re-contact Plaintiff's treating psychiatrists or order a consultative examination, because the record contained sufficient evidence—including a medical opinion, extensive medical records, and Plaintiff's subjective allegations—for the ALJ to determine the extent of Plaintiff's mental impairments. Accordingly, the ALJ did not err in failing to develop the record.

### C. The ALJ did not err in failing to include a limitation on Plaintiff's alleged limited ability to adapt to changes in the workplace.

Plaintiff's final RFC-related contention is that the ALJ erred in failing to include a supported limitation. According to Plaintiff, Dr. Altomari opined that Plaintiff could "adapt to most changes in the workplace," R. at 89, implying Dr. Altomari thought there were some changes Plaintiff could *not* adapt to. Plaintiff further argues that the ALJ accorded this part of Dr. Altomari's opinion great weight yet failed to include it in the RFC. This inconsistency, Plaintiff reasons, requires clarification from the ALJ. The Court disagrees.

In formulating the RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians."

7

*Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (internal quotation marks omitted).  Thus, just because Dr. Altomari imposed a limitation in his opinion does not require the ALJ to include that limitation in the RFC.  In any event, there is no indication that the ALJ agreed with this limitation or that it was supported by record evidence.  The ALJ only gave great weight to "Dr. Altomari's finding that the claimant is capable of simple work," not his finding about the ability to adapt to changes in the work environment.  R. at 21.  Thus, Plaintiff is incorrect that the ALJ agreed with this limitation.  Even more fatal to Plaintiff's contention is his failure to point to a single piece of evidence supporting this purported limitation.  Accordingly, the Court finds no error in the ALJ's failure to include this alleged limitation.

## II. The ALJ did not err at Step Five of the sequential process.

Plaintiff's final argument is a corollary on a previous Step Four argument.  Citing to *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), Plaintiff contends the ALJ failed to carry his burden of proving that Plaintiff could perform other work because the ALJ relied solely on Dr. Altomari's opinion.

The Court finds this contention unavailing.  Here, unlike in *Nevland*, the ALJ did not solely rely upon Dr. Altomari's opinion.  As discussed above, the ALJ also relied upon Plaintiff's psychiatric treatment records and subjective allegations in formulating the RFC.  Thus, the Court finds *Nevland* inapposite, and Plaintiff's argument to be without merit.

## Conclusion

Since substantial evidence on the record as a whole supports the ALJ's decision, the Commissioner's denial of benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  December 29, 2014         /s/ Greg Kays
                                  GREG KAYS, CHIEF JUDGE
                                  UNITED STATES DISTRICT COURT